UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NORMAN GARDENER,[1] )
 )
 Plaintiff, )
 )
 vs. ) Case No. 4:18 CV 620 (JMB)
 )
WILLIAM P. BARR,[2] et al., )
 )
 Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to Rule 12(h)(3), Fed.R.Civ.P., or, in the alternative, for judgment on the pleadings pursuant to Rule 12(c).[3] Plaintiff has filed a response in opposition and the issues are fully briefed. In addition, the parties appeared for oral argument on February 20, 2019. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Plaintiff Norman Gardener, a native of Jamaica and lawful permanent resident of the United States, filed an application for naturalization in September 2015. He attended naturalization interviews in February and April 2016. When two years had passed without a

---

[1] The docket sheet in this matter identifies plaintiff as "Norman Gardner," while the documents identify him as "Norman Gardener." The Court has selected the second spelling in order to maintain consistency.

[2] William P. Barr was appointed as the United States Attorney General on February 14, 2019. See Rule 25(d), Fed.R.Civ.P.

[3] Because defendants filed their motion before filing a responsive pleading, the Court will treat the motion as seeking dismissal for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

decision on his pending application, plaintiff filed this action pursuant to 8 U.S.C. § 1447(b),[4] in which he asks the Court to either naturalize him or direct the Department of Homeland Security (DHS) to adjudicate his application. Shortly after he filed suit, however, DHS placed plaintiff in removal proceedings. Defendants now seek dismissal arguing, first, that the Court lost jurisdiction when DHS initiated removal proceedings and, second, that even if the Court retains jurisdiction, there is no longer a remedy available to plaintiff.

## I. Background

Plaintiff, who became a lawful permanent resident of the United States in 1991, has filed two applications for naturalization. He filed his first application on February 5, 1998. At his interview in October 2000, he stated both that he had voted in an election and that he had never falsely represented that he was a citizen of the United States. On July 27, 2001, the Immigration and Naturalization Service (INS) denied plaintiff's naturalization application because he had registered to vote in the City of St. Louis, signing under penalty of perjury a voter's registration card certifying that he was a United States citizen.[5] Decision dated July 27, 2001 [Doc. # 10-1 at 7-8]. INS stated that plaintiff's conduct violated 18 U.S.C. § 1015(f), which proscribes making a false claim of U.S. citizenship in order to vote or register to do so. In addition, plaintiff gave false testimony under oath during his interview when he stated that he had never claimed to be a

---

[4] Plaintiff named as defendants then-Attorney General Jefferson Sessions; Department of Homeland Security (DHS) Secretary DHS Kirstjen Nielson; U.S. Citizenship and Immigration Services (USCIS) Acting St. Louis Field Office Director Ann Marie Jordan-Starks; USCIS Director L. Francis Cissna; Federal Bureau of Investigations (FBI) Director, Christopher A. Wray; and FBI Special Agent in Charge, St. Louis Office, Richard Quinn.

[5] In its 2001 Decision, INS stated:

> The Board of Election Commissioners for the City of St. Louis has provided this office with a copy of your voter's registration card [which you signed] under the statement, "I hereby certify that: (1) I am a citizen of the United States . . . I do swear under penalty of perjury that all statements made on this card are true to the best of my knowledge and belief."

Decision dated July 27, 2001 [Doc. # 10-1 at 8].

2

U.S. citizen. Under INS regulations, a naturalization applicant who gives false testimony for the purpose of obtaining an immigration benefit "will be found to lack good moral character." Id. (citing 8 C.F.R. Part 316.19(b)(vi)). Nonetheless, plaintiff was informed that the denial of his application was without prejudice to his ability to file a new application on or after October 18, 2005.

The subject of this lawsuit is plaintiff's second application, filed on September 18, 2015. [Doc. # 10-1 at 15-35]. He appeared for a naturalization interview on February 18, 2016, which was memorialized in a Record of Sworn Statement in Affidavit Form [Doc. # 10-1 at 11-12]. According to this document, plaintiff reported that he had again voted, this time in the 2008 presidential election. In addition, he stated that he had been charged with disturbing the peace and forcible rape, but that the charges had been dismissed. At a second interview on April 25, 2016, plaintiff stated that the last time he voted was in 2001, he had not voted in 2008, and that the prior sworn statement was incorrect. Apr. 25, 2016 Record of Sworn Statement in Affidavit Form [Doc. # 10-1 at 13-14].[6] Plaintiff's insistence that he had not voted in 2008 is consistent with a February 2017 report from the St. Louis City Board of Election Commissioners. This report shows that plaintiff voted in a special election and a general municipal election in 1997, in the November general election in 2000, and in a primary election in March 2001. His voter registration was cancelled in January 2013. [Doc. # 1-7 at 4-7].

---

[6] Following April 2016 interview, the interviewing officer asked for documents showing the disposition on a number of charges: (1) third-degree assault on May 2, 1994, issued by St. Louis Metropolitan Police Department; (2) third-degree assault and resisting arrest on November 20, 1996, issued by University City Police Department; (3) forcible rape-forcible compulsion, sexual assault, and sexual abuse on June 30, 2008, issued by St. Louis Metropolitan Police Department; and (4) failure to place vehicle not in motion as near right side of highway as practicable, resulting in an accident on January 12, 1996, issued by St. Louis Highway Patrol Troop C. [Doc. # 1-6 at 2]. Records dated February 7, 2017, from the St. Louis Metropolitan Police Department show that plaintiff has no record of conviction (items 1 and 3). County records show that plaintiff pleaded to ordinance charges of assaulting a person and resisting arrest, for which he was assessed fines totaling $80.00 (item 2). The record before the Court does not include documents relevant to item 4. [Doc. # 1-7 at 2].

On April 18, 2018, nearly two years after his interview, plaintiff filed this complaint, pursuant to 8 U.S.C. § 1447(b). He asks the Court to compel defendants to adjudicate his application for naturalization within 30 days. On May 25, 2018, DHS issued to plaintiff a notice to appear for removal proceedings in immigration court. [Doc. # 10-1]. The notice alleges that he is removable under 8 U.S.C. § 1227(a)(6) because he voted on November 7, 2000, in violation of 18 U.S.C. § 611. Id. at 2, 4. The notice was served on plaintiff by mail. Id. at 4. A hearing has been set for May 22, 2019. [Doc. # 17-1].

## II. Legal Standards

The government moves to dismiss for lack of subject-matter jurisdiction or, in the alternative, for judgment on the pleadings. Under Rule 12(b)(1), the movant must successfully challenge the complaint "on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citing Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir. 1990)). In a facial attack, the court can only consider the "face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Disability Support All. v. Geller Family Ltd. P'ship III, 160 F. Supp. 3d 1133, 1136 (D. Minn. 2016). By contrast, "in a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." Id.

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff need not provide specific facts in support of his allegations. Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above

a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Twombly, 550 U.S. at 555 & n.3). The Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable" and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Twombly, 550 U.S. at 555-56. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however. Iqbal, 556 U.S. at 678-79 ("While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations.") Finally, courts review the plausibility of a plaintiff's claim "as a whole, not the plausibility of each individual allegation," considering only the materials that are "necessarily embraced by the pleadings and exhibits attached to the complaint[.]" Whitney v. Guys, Inc., 700 F.3d 1118, 1128 (8th Cir. 2012) (citation omitted).

### III. Discussion

Plaintiff seeks relief in this Court pursuant to 8 U.S.C. § 1447(b), which provides a naturalization applicant with the right to file a petition for hearing in a federal court if USCIS fails to make a determination on a naturalization application within 120 days of completing the applicant's naturalization examination.[7] Defendants argue that, once they placed plaintiff into removal proceedings, the Court was stripped of its jurisdiction under § 1447(b), by operation of

---

[7] The statute states:

> If there is a failure to make a determination [on a naturalization application] before the end of the 120–day period after the date on which the examination is conducted . . ., the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. <u>Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions,</u> to the [USCIS] to determine the matter.

8 U.S.C. § 1447(b) (emphasis added).

5

another statute — 8 U.S.C. § 1429.[8] Assuming that the Court retains jurisdiction, defendants further argue that the removal process forecloses the possibility of redress for plaintiff's claims and his complaint must be dismissed for failure to state a claim. Plaintiff argues that, by its plain language, § 1429 applies only to the executive branch. Thus, he asserts, the Court's statutory grant of jurisdiction under § 1447(b) remains intact and the Court may consider his naturalization application, regardless of the pending removal proceedings. Alternatively, he argues, § 1429 does not apply because the removal proceedings were initiated by a notice to appear rather than "pursuant to a warrant of arrest." Finally, he contends that the government is estopped from using the 2000 voter fraud to bar his efforts to obtain naturalization from this Court.

### A. Statutory Framework

Addressing the parties' arguments requires the Court to examine the interplay between two processes: naturalization and removal, and the changes in the statutes that govern them — § 1447(b) and § 1429. Dilone v. Nielsen, et al., No. PWG-18-1018, 2019 WL 418422, at *3 (D. Md. Feb. 1, 2019).

In the past, district courts had authority to naturalize, while the authority to deport aliens — now referred to as "removal" — was vested in the Attorney General.[9] De Lara Bellajaro v. Schiltgen, 378 F.3d 1042, 1045 (9th Cir. 2004). It was possible for naturalization and removal

---

[8] Section 1429 states in relevant part:

> [N]o person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act; and <u>no application for naturalization shall be considered by the Attorney General</u> if there is pending against the applicant a removal proceeding <u>pursuant to a warrant of arrest</u> issued under the provisions of this chapter or any other Act.

8 U.S.C. § 1429 (emphases added).

[9] "The statutory reference to the Attorney General is a legal artifact." Awe v. Napolitano, 494 Fed. App'x 860, 863 n.3 (10th Cir. 2012). In 2002, Congress transferred the function of adjudicating naturalization petitions to the United States Citizenship and Immigration Services (USCIS). As a result, courts interpret references to the Attorney General as referring to the authority of the USCIS. Yith v. Nielsen, 881 F.3d 1155, 1158 (9th Cir. 2018).

proceedings to advance simultaneously, Ajlani v. Chertoff, 545 F.3d 229, 235 (2d Cir. 2008), and because "neither proceeding had priority over the other . . ., an alien could find himself in a race against the government, with the alien pressing the court to grant him citizenship before the government could order his removal from the country," Dilone, 2019 WL 418422, at *3 (citing Shomberg v. United States, 348 U.S. 540, 544 (1955)). In 1950, to end this race, Congress enacted 8 U.S.C. § 1429 to provide that "no petition for naturalization shall be finally heard <u>by a naturalization court</u> if there is pending against the petitioner a deportation proceeding." Bellajaro, 378 F.3d at 1045 (quoting 8 U.S.C. § 1429 (1952) (emphasis added)). This "priority provision" ensures that deportation proceedings take precedence over an alien's attempts to naturalize. See Zayed v. United States, 368 F.3d 902, 905 (6th Cir. 2004); Dilone, 2019 WL 418422, at *3 (citing Shomberg, 348 U.S. at 544).

In 1990, Congress amended the law to vest naturalization authority solely in the Attorney General. Yith v. Nielsen, 881 F.3d 1155, 1162 (9th Cir. 2018); 8 U.S.C. § 1421(a) ("The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General."); Etape v. Chertoff, 497 F.3d 379, 385 (4th Cir. 2007) (in 1990, Congress attempted to streamline the naturalization process to give the Attorney General authority to naturalize a citizen without permission from the district court); Dilone, 2019 WL 418422, at *3 (stating that Congress tried to streamline process and relieve stress on district court dockets). At the same time, Congress amended the priority provision, § 1429, by replacing "a naturalization court" with "the Attorney General." Yith, 881 F.3d at 1162.

"At the same time that the 1990 Act refocused the priority provision to limit the Attorney General's newly conferred naturalization authority, the law reserved a measure of naturalization jurisdiction for the courts in two circumstances: denial and delay." Ajlani, 545 F.3d at 236. Thus, an alien whose application has been denied after agency examination and then on review

by an immigration judge[10] may seek review of the denial in the district court. § 1421(c). "Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law." Id. Section 1447(b), the "delay" provision, authorizes an applicant to petition a district court if USCIS fails to make a determination on a naturalization application within 120 days after it has conducted its examination. Under § 1447(b), the district court has jurisdiction to "determine the matter or remand the matter, with appropriate instructions, to [USCIS] to determine the matter." § 1447(b). Plaintiff's action here is brought pursuant to § 1447(b).

### B. Effect of Removal Proceedings on Subject-Matter Jurisdiction

Shortly after plaintiff filed this suit, the government commenced removal proceedings. The government asserts that, by so doing, it has stripped the Court of the jurisdiction granted by § 1447(b). The parties have not cited, and the Court's independent research has not identified, any decisions by the Eighth Circuit Court of Appeals addressing the effect of removal proceedings on a district court's subject matter jurisdiction under § 1447(b). The United States District Court of Maryland extensively addressed this issue in the recent Dilone decision, from which the following discussion borrows.

Federal courts possess only the powers granted by the Constitution and statute. Dilone, 2019 WL 418422, at *5 (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Hagans v. Lavine, 415 U.S. 528, 538 (1974)). Section 1447(b) "allows an applicant to invoke a federal court's jurisdiction when USCIS has failed to either grant or deny" an application within the 120 days following the applicant's examination. Id. (quoting § 1447(b)). Because more than 120 days elapsed between plaintiff's April 2016 examination and the filing of this action, it is undisputed that the Court had jurisdiction over the matter at the time plaintiff

---

[10] Section 1447(a) provides that "[i]f, after an examination under section 1446 of this title, an application for naturalization is denied, the applicant may request a hearing before an immigration officer."

8

filed this suit. The question, then, is whether the Court lost its jurisdiction when DHS placed plaintiff in removal proceedings.

The Supreme Court has promulgated a "readily administrable bright line rule for determining whether statutory language is jurisdictional." Dilone, 2019 WL 418422, at *5 (quoting Henderson *ex rel.* Henderson v. Shinseki, 562 U.S. 428, 435 (2011)) (internal quotations and citation omitted). Under this rule, a court looks for some "clear indication that Congress wanted" the statutory terms to be jurisdictional. Id. (quoting Henderson, 562 U.S. at 435, and Klene v. Napolitano, 697 F.3d 666, 668 (7th Cir. 2012)). It "is apparent on its face" that § 1447(b) is a jurisdictional statute. Id. Section 1429, by contrast, contains no direct reference to the courts. Indeed, "while the provision expressly precludes the Attorney General from considering a naturalization application while removing proceedings are pending, it is entirely silent about the courts' authority under these same circumstances." Id. (emphasis in original). "When Congress decides to strip the courts of subject-matter jurisdiction in a particular area, it speaks clearly." Id. (quoting Minn-Chem, Inc. v. Agrium, Inc., 683 F.3d 845, 852 (7th Cir. 2012) (en banc). Thus, the Court concludes that § 1429 does not strip the district courts of the jurisdictional grant in § 1447(b). Id. This is consistent with the conclusions of the two circuit courts to consider the effect of § 1429 on the jurisdiction granted district courts by § 1447(b). See Yith, 881 F.3d at 1161 (concluding based on statutory language and historical context that § 1429 restricts only the Attorney General and does not limit the district court's power to naturalize an applicant while removal proceedings are pending); Rahman v. Napolitano, 385 F. App'x 540, 544 (6th Cir. 2010) (district court was not deprived of subject matter jurisdiction by initiation of removal proceedings, but was precluded from granting relief). The circuit courts have reached a similar conclusion with respect to the impact of removal proceedings on district courts' jurisdiction under § 1421(c) to review a DHS denial of

9

naturalization. See Klene, 697 F.3d at 668 (7th Circuit) ("Congress has authorized district courts to decide whether aliens are entitled to naturalization. No more is necessary for subject-matter jurisdiction."); Awe v. Napolitano, 494 F. App'x 860, 865 (10th Cir. 2012) ("[Section] 1429 does not strip district courts of jurisdiction over petitions regarding naturalization applications."); Gonzalez v. Sec'y of Homeland Sec., 678 F.3d 254, 258-59 (3d Cir. 2012) (same); Bellajaro, 378 F.3d at 1046 (9th Circuit) ("There is no hint in the language of § 1429 that it . . . applies to the courts. Thus, we see no textual basis for concluding that jurisdiction vested in district courts by § 1421(c) is divested by § 1429."); Zayed, 368 F.3d at 906 (6th Circuit) (same); see also Kovacevic v. Duke, No. 4:15CV1748 CDP, 2017 WL 3421513, at *3 (E.D. Mo. Aug. 9, 2017) (concluding that § 1429 does not divest court of jurisdiction to conduct de novo review of denial of naturalization petition). Accordingly, the Court finds that it retains subject matter jurisdiction over plaintiff's § 1447(b) claim despite the initiation of removal proceedings.

### C. Effect of Removal Proceedings on Available Remedies

The Court next considers what, if any, remedies are available or warranted under the present circumstances. Section § 1447(b) grants the Court jurisdiction to "either [1] determine the matter or [2] remand the matter, with appropriate instructions, to the [USCIS] to determine the matter." The initiation of removal proceedings seemingly eliminates the second course of action, because § 1429 explicitly bars USCIS from considering the application. See Klene, 697 F.3d at 668 ("If the Attorney General cannot naturalize an alien after removal proceedings have begun, the court cannot direct the Attorney General to naturalize the alien. Judges must not order agencies to ignore constitutionally valid statutes."); see also Ajlani, 545 F.3d at 238; Zayed, 368 F.3d at 906.

The parties hotly dispute whether the initiation of removal proceedings precludes the Court from "determin[ing] the matter." The courts are similarly divided. As recently stated by the court in Dilone:

> The Ninth Circuit has adopted the textualist approach, holding that § 1429 merely blocks federal agents from considering an application for naturalization while removal proceedings are pending but does not preclude a district court from doing the same.[11] See Yith, 881 F.3d at 1161. The Second, Fifth, and Sixth Circuits, by contrast, have concluded the preclusive effect of § 1429 applies to USCIS and the courts with equal force. See Rahman, 385 F. App'x at 544; Ajlani, 545 F.3d at 238-39; Saba-Bakare v. Chertoff, 507 F.3d 337, 340 (5th Cir. 2007).

Dilone, 2019 WL 418422, at *6. The Dilone court undertook an extensive analysis of the case law and statutes and concluded that, while § 1429 "expressly restricts the Attorney General's power to consider a naturalization application while removal proceedings are pending[, it] does not restrict the courts' power in a comparable fashion." Id. at *9. Despite this conclusion, however, the Dilone court stayed the case to allow removal proceedings to finish, recognizing that proceeding with the court case while removal proceedings are pending "does, in effect, restart the 'race' that Congress sought to end when it gave removal proceedings priority over naturalization adjudications in 1950." Id. at *11. This Court agrees that "determining the matter" while the removal process is underway is contrary to congressional intent to end the race between the two processes. Thus, the Court need not determine the ultimate question of whether it has the power to adjudicate plaintiff's naturalization application, because it will defer to the pending removal proceedings.[12]

---

[11] The Ninth Circuit held that the district court erred in dismissing the plaintiffs' complaint for failure to state a claim and remanded for further proceedings. Yith, 881 F.3d at 1168.

[12] Some courts have concluded that § 1429 does not restrict the district courts' authority to grant declaratory relief. Thus, the Third Circuit determined that "[d]eclaratory relief strikes a balance between the petitioner's right to full judicial review as preserved by § 1421(c) and the priority of removal proceedings enshrined in § 1429." Gonzalez, 678 F.3d at 260. The Seventh Circuit agreed, but noted that although "[t]he existence of overlapping proceedings does not diminish a district court's power," it "does present a question on which the judge should exercise sound judgment." Klene, 697 F.3d at 669

11

### D. Warrant of Arrest

Another issue the parties hotly contest is whether placing an alien into removal proceedings through a notice to appear triggers the language in § 1429 that bars the Attorney General from considering a naturalization application "if there is pending against the applicant a removal proceeding <u>pursuant to a warrant of arrest</u> issued under the provisions of this chapter or any other Act." § 1429 (emphasis added). Plaintiff contends that, because he was placed in removal proceedings pursuant to a notice to appear and was not arrested, his naturalization application may be heard. The government contends that a notice to appear is sufficient to trigger the language in § 1429 which precludes consideration of a naturalization application while the removal proceedings are pending.

Congress did not include a definition of "warrant to arrest" in the Immigration and Naturalization Act, see 8 U.S.C. § 1101, but DHS has promulgated a regulation which states that, "[f]or the purposes of [8 U.S.C. § 1429], a notice to appear issued under 8 C.F.R. part 239 . . . shall be regarded as a warrant of arrest." 8 C.F.R. § 318.1.

In addressing the impact of § 318.1, the Seventh Circuit stated:

> An agency can't rewrite statutory terms, but it can define its own vocabulary. Since "arrest" does not imply custody even in police parlance (full custodial arrests are a subset of all arrests), there's no logical problem with an agency calling its official process a "notice to appear" and a "warrant of arrest" at the same time, without needing to issue two separate documents. On this, at least, all other courts of appeals agree, and we join them.

<u>Klene</u>, 697 F.3d at 670.

---

(reversing and remanding with instructions to decide whether to resolve the dispute through declaratory judgment). Plaintiff here does not seek a declaratory judgment, however, and thus the Court need not decide this issue. Furthermore, any declaration that plaintiff satisfies the requirements for citizenship would not affect the outcome of his removal proceedings because his act of registering to vote and voting in 2000 is outside the five-year "good moral character" period examined for naturalization, while still being grounds for removal. [Doc. # 10 at 13-14]. "A declaratory judgment that is only effective if petitioner prevails in another proceeding comes precariously close to being an impermissible advisory opinion." <u>Kovacevic</u>, 2017 WL 3421513, at *4.

The Ninth Circuit addressed the same issue and has come to a contrary conclusion. Yith, 881 F.3d at 1165-68. Analyzing DHS's construction under Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984), the Ninth Circuit concluded that "warrant of arrest" unambiguously means "an order authorizing law enforcement to seize and detain a person as necessary for the administration of law." Id. at 1166. Thus, the Ninth Circuit concluded, a notice to appear is not the same as a warrant of arrest as required by § 1429.

The Court finds that, while there may be some appeal to the Ninth Circuit's analysis, it is ultimately unworkable. The Ninth Circuit's conclusion basically rests on a finding that "warrant of arrest" has a fixed meaning such that any other agency interpretation would, in effect, be inconsistent with the plain language of the statute. The Court finds the Seventh Circuit's conclusion more persuasive — warrant of arrest can mean something less than an order commanding a full custodial seizure.[13]

Additionally, accepting the interpretation plaintiff proposes would seem to undermine the very system Congress intended in which removal proceedings take priority over naturalization proceedings. Thus, even adopting plaintiff's interpretation of "warrant of arrest," the Court has decided to refrain from taking action on this matter in order to give effect to Congress's clear intent to prioritize removal proceedings over naturalization.

---

[13] At the hearing in this matter, plaintiff produced two exhibits. Plaintiff's Exhibit 1 was a sample DHS form for "Warrant for Arrest of Alien." Plaintiff's Exhibit 2 was a sample "Notice to Appear" form. At the hearing, plaintiff argued that warrants for arrest were used when the alien was already in custody (presumably on another matter). Thus, plaintiff contends, in essence, that a warrant in this context is a mechanism for transferring custody of a person for removal proceedings. Plaintiff argued, therefore, that the government could not serve a warrant on him in this case. These arguments do no directly address the more relevant question of whether a notice to appear triggers § 1429 preclusion. Rather, they reinforce the government's position that the agency has defined "warrant of arrest" to include both 'warrants for arrest" and "notices to appear." Furthermore, the sample Warrant for Arrest form encompasses more than a mere "authorization" to initiate a custodial arrest. Rather, it is a "command" to arrest and take someone into custody.

### E. Collateral Estoppel and Res Judicata

Plaintiff argues that the doctrines of collateral estoppel and res judicata preclude DHS from initiating removal proceedings against him on the basis of his voting in 2000 because it already "adjudicated" that conduct in 2001 when it denied his first application for naturalization. For a fact to be established by collateral estoppel, five elements must be satisfied: (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment. Sandy Lake Band of Miss. Chippewa v. United States, 714 F.3d 1098, 1102–03 (8th Cir. 2013). "Res judicata bars relitigation of a claim if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." Cardona v. Holder, 754 F.3d 528, 530 (8th Cir. 2014).

The Court is not convinced that plaintiff can satisfy the elements of collateral estoppel or res judicata because denial of naturalization and removal proceedings are not identical causes of action. Even if plaintiff established the elements, however, the Court is precluded from addressing the decision of DHS to initiate removal proceedings by 8 U.S.C. § 1252(g), which states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings." This statute also prevents the Court from addressing plaintiff's argument that DHS initiated removal in order to retaliate against him for filing this action. This claim is more properly addressed within his removal proceedings.

Plaintiff finally argues that his rights to procedural due process will be violated if the Court does not decide the merits of his application for naturalization. The Court disagrees: there is an entire process for plaintiff to contest the government's assertion that he is subject to deportation, beginning with a hearing before the Immigration Judge, followed if necessary by review by the Board of Immigration Appeals and, ultimately, by the Circuit Court of Appeals.

### IV. Conclusion

Based upon its review of the statutes and case law, the Court concludes that it has jurisdiction over plaintiff's complaint under 8 U.S.C. § 1447(b). The Court also concludes, however, that it cannot presently provide plaintiff relief on his complaint and give effect to Congress's clear intent to prioritize removal proceedings over naturalization. Nonetheless, the Court declines to dismiss plaintiff's complaint because, if he prevails in the removal proceedings, he is entitled to have his § 1447(b) claims adjudicated. Accordingly, the Court will stay this matter during the pendency of removal proceedings and will direct the Clerk of Court to administratively close the case. Either party may file a motion to reopen proceedings here at the conclusion of removal proceedings.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss or, in the alternative for judgment on the pleadings [Doc. # 9] is **denied**.

**IT IS FURTHER ORDERED** that plaintiff's motion to expedite decision on defendants' motion [Doc. # 17] is **denied as moot**.

**IT IS FURTHER ORDERED** that this matter is **stayed** until further order of the Court.

**IT IS FURTHER ORDERED** that the Clerk of Court shall administratively close this case, subject to reopening on motion by either party.

**IT IS FURTHER ORDERED** that, within 14 days of the conclusion of the removal proceedings, the parties shall inform the Court of the outcome and shall propose a schedule for further proceedings.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of March, 2019.